UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARQUEZ MACK,

                                        Plaintiff,

                    v.

THE COUNTY OF ERIE, NEW YORK,
ROBERT KOCH, Individually and in his official
  capacity as Superintendent of the Erie County
  Holding Center,
SHERIFF TIMOTHY HOWARD, Individually
  and in his official capacity as Sheriff of Erie
  County, Deputy Sheriff,
Sergeant Robert Dee,
One or More John Does,
Deputy Daniel Buziak,
Deputy Brian O'Leary,
Deputy Jerome Recktenwalt,
Deputy Mark Scanlon,
Deputy Michael Vail, and
Deputy Jeffrey Wagner,

                                        Defendants.
_____

                                        REPORT
                                         and
                                  RECOMMENDATION

                                  11-CV-00303A(F)

APPEARANCES:        LIPSITZ & PONTERIO, LLC
                    Attorneys for Plaintiff
                    JOHN N. LIPSITZ, and
                    NAN LIPSITZ HAYNES, of Counsel
                    135 Delaware Avenue
                    Suite 210
                    Buffalo, New York  14202-2410

                    WEBSTER SZANYI, LLP
                    Attorneys for Defendants
                    CHARLES E. GRANEY,
                    JEREMY A. COLBY, and
                    MICHAEL P. McCLAREN, of Counsel
                    1400 Liberty Building
                    Buffalo, New York  14202

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on March 9, 2012, for all pretrial matters including Report and Recommendation on dispositive motions.  The case is presently before the court on Defendants' motion for partial summary judgment (Doc. No. 68), filed October 5, 2012.

## BACKGROUND

On April 8, 2011, Plaintiff Marquez Mack ("Plaintiff"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that on January 29, 2010, while in the custody of the Erie County Sheriff's Department ("Sheriff's Department"), Plaintiff was maliciously and wantonly beaten by Defendants, all of whom are employees of the Sheriff's Department.  After filing three amended complaints, Plaintiff filed his Fourth Amended Complaint (Doc. No. 56) ("Fourth Amended Complaint"), on June 5, 2012, naming as Defendants Erie County Sheriff Timothy Howard ("Sheriff Howard"), Sergeant Robert Dee ("Sergeant Dee"), and Deputy Sheriffs Daniel Buziak ("Buziak"), Brian O'Leary ("O'Leary"), Jerome Recktenwalt ("Recktenwalt"), Michael Vail ("Vail"), and Jeffrey Wagner ("Wagner") (collectively, "Defendant Deputies"), on whom Plaintiff served interrogatories on June 11, 2012 (Docs. Nos. 57-63).  Plaintiff asserts as claims for relief a claim against Defendant Sheriff Howard for failure to train and supervise Defendant Deputies, Fourth Amended Complaint, First Claim for Relief, and excessive force against Defendant Sergeant Dee and Defendant Deputies, Fourth Amended Complaint, Second Claim for Relief. Defendants' answer was filed on June 19, 2012 (Doc. No. 64) ("Answer"), and asserts, *inter alia*, qualified immunity as an affirmative defense.

2

On October 5, 2012, Defendants filed the instant motion seeking partial summary judgment (Doc. No. 68) ("Defendants' Motion"), attaching the Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 68-1) ("Defendants' Memorandum"), Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 of the Local Rules of Civil Procedure (Doc. No. 68-2) ("Defendants' Statement of Facts"), the Declaration of Anthony Giglio in Support of Defendants' Motion for Summary Judgment (Doc. No. 68-3) ("Giglio Declaration"), the Declaration of Mark N. Wipperman in Support of Defendants' Motion for Summary Judgment (Doc. No. 68-4) ("Wipperman Declaration"), and exhibits A to D (Doc. No. 68-5), and E to K (Doc. No. 68-6) (Defendants' Exh(s). ___").   In opposition, Plaintiff filed the Affidavit of Nan L. Haynes Setting Forth Facts Unavailable to Nonmoving Party Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Doc. No. 75) ("Haynes Affidavit"), attaching exhibits A through F (Docs. Nos. 75-1 through 75-6) ("Plaintiff's Exh(s). ___"), Plaintiff's Opposing Statement of Undisputed Material Facts Pursuant to Rule 56.1 of the Local Rule of Civil Procedure (Doc. No. 76) ("Plaintiff's Statement of Facts"), attaching exhibits 1 through 5 (Docs. Nos. 76-1 through 76-5) ("Plaintiff's Statement of Facts Exh(s). ___"), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 77) ("Plaintiff's Memorandum"), and the Affirmation of Steven Lakomy, MD (Doc. No. 78) ("Dr. Lakomy Affirmation"), attaching exhibits A and B (Docs. Nos. 78-1 and 78-2) ("Dr. Lakomy Affimation Exh(s). ___").   On December 12, 2012, Defendants filed the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 82) ("Defendants' Reply"), and the Reply Declaration of Jeremy A. Colby, Esq., in Further Support of Defendants'

Motion for Summary Judgment (Doc. No. 82-1) ("Colby Reply Declaration").  Oral

argument was deemed unnecessary.

Based on the following, Defendants' Motion should be DENIED.

# FACTS[1]

On January 29, 2010, while being held as a pretrial detainee at the Erie County

Holding Center ("the Holding Center"), Plaintiff Marquez Mack ("Plaintiff" or "Mack"),

while being escorted at 11:26 A.M., with 13 other Holding Center residents from Erie

County Court, following court proceedings, to the Holding Center, walked in single file

formation along the left side of a hall.  Plaintiff's hands were cuffed and the handcuffs

were tethered to a belt encircling Plaintiff's waist, which Plaintiff maintains is standard

when being transported between the Holding Center and court.  When Plaintiff

momentarily drifted from the left side to the middle of the hall, Defendant Deputy Sheriff

Brian O'Leary ("O'Leary"), instructed him to move further to the left and Plaintiff

complied.  O'Leary then pulled Plaintiff from the line and O'Leary and Deputy Sheriff

Jeffrey Wagner ("Wagner"), took Plaintiff to a court hold cell ("the court hold cell"),

where Plaintiff maintains Defendant Deputies repeatedly kicked, choked, and spit on

him, slamming Plaintiff's head into the wall, and referred to Plaintiff with an ethnic slur.

Defendants maintain their use of force against Plaintiff was limited to that necessary to

restore order to the Holding Center.  It is undisputed that as a result of the altercation,

Plaintiff sustained a right knee effusion (build-up of fluid).

Following the incident, Plaintiff was observed pacing about the court hold cell in

no apparent pain, and kicking the door to the cell with his left foot.  When Plaintiff

---

[1] Taken from the pleadings and motion papers filed in this action.

complained of pain in his right leg and knee, he was examined at 1:00 P.M. on January 29, 2010, by a physician who diagnosed "contusion/sprain to knee; multiple very superficial 'brush burns' and mild pre-patellar effusion."  Plaintiff's Medical Records,[2] COE-MACK 00037-38.  Plaintiff was placed on "no work" status, and "no recreation" status, prescribed ibuprofen for pain, and advised to follow-up in 72 hours.  *Id.* COE-MACK 00038.  Two days later, on January 31, 2010, Plaintiff was examined again for right knee, leg, and ankle pain.  *Id.* COE-MACK 00178.  Right leg contusion was diagnosed and crutches were ordered.  *Id.*  X-rays of Plaintiff's right knee taken on February 1, 2010 at Erie County Medical Center ("ECMC"), showed "right knee effusion."  *Id.* COE-MACK 00371-72, 00374.  Plaintiff was again examined on February 2, 2010, diagnosed with "contusion," prescribed crutches and Motrin, and his work and recreation restrictions were continued.  *Id.* COE-MACK 00015-16.  On Feburary 4, 2010, Plaintiff was examined for "worsening r[ight] knee pain", *id.*, COE-MACK 00013-14, and, on Plaintiff continued to complain of right knee pain on Feburary 10, 18, and 23, 2010, describing the pain on February 10 and 23, 2010, as "excrutiating."  *Id.* COE-MACK 00076, 00215, and 00217.  Although a knee cartilage tear was suspected, a further X-ray taken March 8, 2010, and an MRI of Plaintiff's right knee on May 11, 2010, were normal.  *Id.* COE-MACK 00373074.

## DISCUSSION

**1.    Summary Judgment**

Defendants move for summary judgment as to the objective element of Plaintiff's excessive force claim, asserting that unless Plaintiff can establish the claim's objective

---

[2] Filed as Defendants' Exh. E and Dr. Lakomy Affirmation Exh. B, each page separately Bates stamped.

element, there is no need to address the subjective element.  Defendants'

Memorandum at 1.   In support of their motion, Defendants extensively rely on two

videos depicting the events that transpired in the Holding Center's hall as Plaintiff was

being escorted back from court ("first video"),[3] and the subsequent altercation between

Plaintiff and Defendant Deputy Sheriffs that ensued in the court hold cell following

Plaintiff's placement there ("second video"),[4] as establishing the force Defendants used

against Plaintiff was not objectively unreasonable, maintaining the video is inconsistent

with Plaintiff's description of the assault given during his deposition.  *Id*.  Defendants

also reserve their right to further move for summary judgment on the excessive force

claim should the instant motion be denied and additional discovery taken.  *Id*.

Defendants also maintain that granting summary judgment on Plaintiff's excessive force

claim will necessarily require granting summary judgment on the failure to train and

failure to supervise claims against Defendants Sheriff Howard and Sergeant Dee, as

well as the failure to intercede claim against Sergeant Dee.  *Id*. at 17.  Finally,

Defendants argue there are qualifiedly immune from liability on all claims.  *Id*. at 18.

      In opposition to summary judgment, Plaintiff maintains that Defendants' Motion is

not supported by sworn statements of any Defendant, and the motion was filed despite

Defendants' refusal to answer Plaintiff's interrogatories requesting each Defendant

Deputy Sheriff describe the nature and extent of physical contact with Plaintiff during the

alleged assault, thereby interfering with Plaintiff's ability to depose such Defendants.

Plaintiff's Memorandum at 1-2.  According to Plaintiff, the video shows the force

Defendants used against him was more than *de minimus*, thereby establishing the

---

[3] Filed as Defendants' Exh. B, and separately as Doc. No. 69.
[4] Filed as Defendants' Exh. C, and separately as Doc. No. 70.

objective element of his excessive force claims, *id*. at 11-12, and issues of fact on the subjective element preclude summary judgment. *Id*. at 12. Plaintiff further argues there are material issues of fact as to the reasonableness of Defendants' use of physical force against Plaintiff, who was handcuffed and, thus, posed no threat to Defendants, precluding qualified immunity. *Id*. at 18.

In further support of summary judgment, Defendants assert Plaintiff has ignored most of Defendants' authorities, cited in Defendants' Memorandum, regarding the objective prong of Plaintiff's excessive force claims because Plaintiff cannot refute them, Defendants' Reply at 1, relying instead on whether the subjective element of the claims is satisfied for summary judgment purposes, an argument which is irrelevant should the court accept Defendants' argument on the objective prong. *Id*. at 6. Defendants also contend the video establishes Defendants are entitled to qualified immunity because their use of force was objectively reasonable and no reasonable juror could conclude otherwise. *Id*. at 8. Further, Defendants maintain Plaintiff has failed to demonstrate a specific need for discovery to oppose summary judgment. *Id*. at 9.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is required to construe the evidence in the light most favorable to the non-moving party. *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The party moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Insofar as Defendants are alleged to have violated Plaintiff's civil rights, pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'"  *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ."  *Id.*  The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).

Here, Plaintiff alleges Defendants subjected him to excessive force by assaulting Plaintiff on January 29, 2011, while Plaintiff was a pretrial detainee at the Holding Center.  Because Plaintiff was, at the time of the alleged assault, a pre-trial detainee, rather than a convicted prisoner, Plaintiff's excessive force claim is analyzed as a denial of due process in violation of the Fourteenth Amendment, rather than as cruel and

unusual punishment in violation of the Eighth Amendment. *Caiozzo v. Koreman*, 581

F.3d 63,69 (2d Cir. 2009) ("a person detained prior to conviction receives protection

against mistreatment at the hands of prison official under the Due Process Clause . . . of

the Fourteenth Amendment if held in state custody."). Nevertheless, whether brought

under the Fourteenth Amendment by a pre-trial detainee or under the Eighth

Amendment by a convicted prisoner, the same analysis applies to an excessive force

claim. *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999).

Specifically, a plaintiff asserting an excessive force claim must establish both an

objective and a subjective element. *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). The

objective test, requiring that the force applied was "sufficiently serious" to establish a

constitutional violation, is "context specific, turning upon 'contemporary standards of

decency.'" *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Blyden v.

Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)). Although "some degree of injury is

ordinarily required to state a claim" of excessive force, *United States v. Walsh*, 194 F.3d

37, 50 (2d Cir. 1999), the "core judicial inquiry" is based on the "nature of the force

rather than the extent of the injury. . . ." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). *De

minimis* force that "is not of a sort repugnant to the conscience of mankind" will not

violate the Constitution. *Hudson*, 503 U.S. at 9-10 (internal quotation marks and citation

omitted). "To meet the subjective requirement, the inmate must show that the prison

officials involved "'had a 'wanton' state of mind when they were engaging in the alleged

misconduct.'" *Griffin*, 193 F.3d at 91 (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir.

1994)). In making this determination, the court may consider "the need for application of

force, the relationship between that need and the amount of force used, the threat

'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312,  321 (1986)).

As stated, Defendants argue in support of summary judgment that Plaintiff cannot establish the objective component of his excessive force claims, thereby rendering it unnecessary to discuss the subjective component and requiring summary judgment in favor of Defendants on all claims.  Defendants' Memorandum at 1.  In support of this argument, Defendants rely on numerous cases in which summary judgment was granted based on video evidence establishing the challenged use of force against an inmate was, objectively, not excessive.  *Id.* at 4-5 (citing cases).  Each of the cases Defendants cite, however, is readily distinguishable from the instant case in that either there was no evidence of any force, *see, e.g., Chambliss v. Rosini*, 808 F.Supp.2d 658, 668 (S.D.N.Y. 2011) (nothing in prison security video supported pre-trial detainee plaintiff's characterization of defendant's pulling on waist chain attached to inmate's handcuffs as a "violent yank") or there was indisputable evidence that the force used objectively reasonable to counter some force or resistance by the inmate, *see, e.g., Kalfus v. New York & Presbyterian Hospital*, 476 Fed.Appx. 877, 880-81 (2d Cir. Apr. 13, 2012) (hospital security video and plaintiff's own audio recording of arrest showed defendant hospital patrolmen's use of force to arrest plaintiff, including turning plaintiff onto his stomach and pulling his arms behind his back to handcuff plaintiff, was objectively reasonable given plaintiff's resistance to arrest); and *Allaway v. McGinnis*, 473 F.Supp.2d 378, 382-83 (W.D.N.Y. 2007) (security video showed use of force by six-man extraction team wearing helmets, transparent plexiglass shields of their arms, and

body armor, was reasonably necessary to remove inmate who refused corrections officer's order to exit outdoor exercise pen, and who "charged" and "lunged" at the extraction team as soon as the door was opened, causing extraction team members to deliver four "softening blows" to coerce inmate's compliance with the officers' orders). In contrast, in the instant case, a plain review of the first and second videos establishes significant issues of fact as to both the objective and subjective elements of an excessive force claim.

In particular, the first video includes video from seven different video security cameras in the Holding Center, showing Plaintiff walking single file in a line with 13 other inmates being led from court back to their cells at the Holding Center.  As the inmates pass from the view of one security camera, they are seen on the next security camera from a different vantage point.  Because the first video depicts video from seven different security cameras, each video in a separate frame, the picture in each frame is relatively small, rendering it difficult to discern subtle detail.  One of the security videos shown in the first video is from the security camera trained on the court hold cell in which Plaintiff was placed after being removed from the hallway.  The second video contains the same feed from the court hold cell security camera, but because it is the only video shown, it is much larger and provides a better view of detail.  Neither the first nor the second video provides any audio and it is thus not possible to determine what dialogue is exchanged between Plaintiff and Defendants.

Because Defendants have moved for summary judgment on only the objective component of Plaintiff's excessive force claims, Defendants focus on what occurred inside the court hold cell, which is shown in the second video.  The court hold cell is a

small, rectangular-shaped cell with the door depicted in the lower right-hand corner.  A bench is located along the wall at the top of the frame.  Across from the bench and to the right is a toilet separated from the rest of the cell by a low privacy wall.  It appears in the second video that in placing Plaintiff into the court hold cell, four sheriff deputies slam Plaintiff's face against the door jamb, and then push Plaintiff toward the bench, slamming his face into the wall behind the bench, before pulling Plaintiff away from the bench, turning Plaintiff around 180 degrees, and slamming Plaintiff's right side into the privacy wall.  Although it may be that the sheriff deputies are not slamming Plaintiff around the court hold cell but, rather, may simply be attempting to restrain Plaintiff who may be struggling against the deputies, such determination involves a factual determination the court is prohibited from making on summary judgment.  *Redd v. New York Division of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) ("The court's role in deciding a motion for summary judgment 'is to *identify* factual issues, *not to resolve them*.'" (italics in original and quoting *Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 156 (2d Cir. 2009)).  Nevertheless, should the trier of facts determine that Plaintiff was not resisting the Defendant Deputies' attempts to subdue Plaintiff, then anything more than a *de minimus* use of force would be excessive.  *See Sims v. Artuz*, 230 F.3d 14, 22-23 (2d Cir. 2000) (holding complaint describing more than *de minimus* force, which was unnecessary and without provocation, stated excessive force claim).

Nor is there any merit to Defendants' argument, Defendants' Memorandum at 12-13, that "blatant" differences between Plaintiff's description of the force Defendant Deputies used against him in the court hold cell, provided during Plaintiff's deposition, and the use of force depicted in the second video, requires granting Defendants'

motion.  Although it cannot be disputed that Plaintiff's recollection of the melee during

his deposition includes statements that Plaintiff was kicked and punched numerous

times, Plaintiff's Dep. Tr.,[5] *passim*, Plaintiff also clearly maintains that he does not recall

the exact number of times he was struck and attributes his lack of precise recall to the

confusion caused by the commotion.  *See*, *e.g.*, Plaintiff's Dep. Tr. at 48 (stating the

blows were "coming from everywhere, so I don't know who exactly delivered what blow.

But I was slapped and I was punched.  You can't pinpoint every one.").  Defendants'

assertion that the number of blows Plaintiff maintains he sustained is not supported by

the video is further undermined that for much of the video, Plaintiff is underneath

several deputy sheriffs, their bodies obscuring the view of Plaintiff, and it is difficult to

determine exactly what is transpiring, although there is movement of the deputy sheriff's

arms and feet that could be the delivery of punches and kicks.  Plaintiff's assertions that

upon being taken into the court hold cell, Defendant Wagner "rammed me into the wall,"

*id.* at 57, and his knee was kicked into the bench, *id*, at 36, are supported by the second

video.  It is not possible to tell from the video whether, as Plaintiff alleges, Fourth

Amended Complaint ¶ 17,  anyone spat on Plaintiff.  That Plaintiff's medical treatment

following the incident included a right knee effusion, requiring Plaintiff be off work and

recreation for several weeks is consistent with, although not determinative of, a use of

excessive force.  *See Wilkins*, 559 U.S. at 39 (extent of injury not determinative of

whether force used was excessive).

　　　　Further, although the second video does show Plaintiff pacing in the court hold

cell and kicking the door after the deputy sheriffs have exited, the kicks are delivered

---

[5]  References to "Plaintiff's Dep. Tr." are to pages of the transcript of Plaintiff's deposition, a copy of which
is filed as Defendants' Exh. A.

with Plaintiff's left leg, rather than the right leg Plaintiff maintains was injured, and

Plaintiff has submitted an affidavit from emergency physician Dr. Lakomy who explains

that following the physical altercation in the court hold cell, Plaintiff may have

experienced an adrenaline rush that would have temporarily masked the pain from his

right knee effusion, allowing Plaintiff to walk seemingly unharmed.  Lakomy Affirmation

¶ 11.  Dr. Lakomy further states that the effusion Plaintiff sustained on his right knee is

consistent with the type of blows to Plaintiff's knee seen on the second video, such that

"the physical impacts on [Plaintiff's] right leg and knee on January 29, 2010, were more

likely than not the cause of plaintiff's right knee effusion and persistent discomfort."  *Id.*

¶ 14.

      Accordingly, there are issues of fact precluding summary judgment on the

objective prong of Plaintiff's excessive force claims, *i.e.*, whether Plaintiff is, in fact,

resisting the deputy sheriff's orders and struggling against their attempts to have

Plaintiff kneel on the court hold cell bench facing the wall, or whether Defendant deputy

sheriffs are aggressively dragging and pushing Plaintiff around, slamming Plaintiff into

the walls of the court hold cell.  Although Defendants have not moved with regard to the

subjective element of Plaintiff's excessive force claims, the first video showing the

events in the hallway prior to Plaintiff's placement in the court hold cell raises questions

as to the necessity for the use of any force against Plaintiff, a determination that cannot

be made on summary judgment.  *Redd*, 678 F.3d at 174.

      In particular, the first video shows the events in the Holding Center's hallway

through which Plaintiff was escorted from court back to his assigned cell, including

Plaintiff, third in line, temporarily wandering from the left side of the hallway to the

center, before complying with a deputy sheriff's direction to return to the left side of the

hallway.  After resuming his place along the left side of the hallway, another deputy

sheriff walks alongside Plaintiff and words are exchanged between the two.  Although it

is not clear from the silent video who initiated the conversation nor its contents, the

deputy sheriff proceeds to pull Plaintiff from the line and brings Plaintiff to the court hold

cell.  In other words, although Defendants maintain Plaintiff was removed from the court

escort line to the court hold cell for disobeying a deputy sheriff's direction to stay in line

against the left-hand side of the hallway, the first video indicates Plaintiff returned to the

left-hand side of the hallway as directed, but was then pursued, for reasons not clear

from the record, by a deputy sheriff who removed Plaintiff from the line.  Accordingly,

the events depicted on the first video are susceptible to more than one reasonable

interpretation including, *i.e.*, whether Plaintiff returned to the left-hand side of the

hallway either in response to the deputy sheriff's direction or on his own initiative, as

well as whether the deputy sheriff's decision to remove Plaintiff from the court escort

line was in response to some verbal expression of defiance by Plaintiff, or motivated by

some malicious intent of the deputy sheriff, resulting in an unwarranted physical attack

by Defendant Deputies.  That the video contains no audio makes this determination, on

Defendants' Motion, impossible and the unresolved issues of fact would prevent

summary judgment on the subjective component of Plaintiff's excessive force claims,

had Defendants so moved.  If the incident were instigated by Defendants, as Plaintiff

maintains, the subsequent force could not have been used "in a good-faith effort to

maintain or restore discipline."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).

Because summary judgment should not be granted in favor of Defendants on Plaintiff's excessive force claims, Defendants' request for summary judgment must also be denied as to Plaintiff's claims against Defendant Sheriff Howard and Sergeant Dee for failure to train, failure to supervise, and failure to intercede, asserted only against Defendant Dee.  Defendants' argument in support of summary judgment on these claims is predicated on successfully moving for summary judgment on the excessive force claims.  Defendants' Memorandum at 17.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (absent an underlying constitutional violation, there can be no liability for failure to properly train employees).  As such, Defendants essentially have conceded that summary judgment cannot be granted with regard to the additional claims asserted against Defendants Sheriff Howard and Sergeant Dee if summary judgment is not granted on the objective prong of Plaintiff's excessive force claims. Accordingly, Defendants' Motion should be DENIED with regard to the additional claims asserted against Defendants Sheriff Howard and Sergeant Dee.

Summary judgment should thus be DENIED as to the objective element of Plaintiff's excessive force claims, as well as Plaintiff's remaining claims asserted against Defendants Sheriff Howard and Sergeant Dee.  Nevertheless, should Plaintiff eventually succeed on his excessive force claim, "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover."  *Wilkins*, 559 U.S. at 40.

2.     Qualified Immunity

Nor should summary judgment be granted with regard to Defendants' affirmative defense that they are qualifiedly immune from liability on Plaintiff's claims, as

Defendants assert.  Defendants' Memorandum at 8-22.  Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue were clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed."  *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (internal quotation marks and citation omitted).

In the instant case, the parties do not dispute that Plaintiff's constitutional right to remain free from excessive force was clearly established as of January 29, 2010, the date of the incident in question.  Accordingly, whether Defendants are entitled to qualified immunity depends on whether their use of force was objectively reasonable, Where, however, the objective reasonableness of an officer's actions depends on disputed facts, as in the instant case, summary judgment based on qualified immunity is properly denied.  *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991).  As such, the same material issues of fact precluding summary judgment on Plaintiff's excessive force claims also preclude summary judgment on Defendant's qualified immunity defense.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 68), should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 3, 2014
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 3, 2014
            Buffalo, New York