**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

MARQUEZ MACK,

                Plaintiff,                      11-CV-00303-A(F)

    v.                                          **DECISION AND ORDER**

SHERIFF TIMOTHY HOWARD, individually and
in his official capacity as Sheriff of Erie County;
SERGEANT ROBERT DEE;
DEPUTY DANIEL BUZIAK;[1]
DEPUTY BRIAN O'LEARY;
DEPUTY JEROME RECKTENWALT;
DEPUTY MICHAEL VAIL; and
DEPUTY JEFREY WAGNER,

                Defendants.
_____

This case arises out a 2010 incident at the Erie County Holding Center involving the Plaintiff, Marquez Mack, and several of the Defendants, Deputy Sheriffs at the Erie County Sheriff's Office.  The Plaintiff alleges that the Defendants violated his Fourteenth Amendment rights by using excessive force against him while he was a pre-trial detainee at the Holding Center.

The Court referred the case to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1).  Dkt. No. 40.  The Defendants moved for summary judgment and, on March 3, 2013, Judge Foschio filed a Report and

---

[1] The captions for both the Fourth Amended Complaint and the Report and Recommendation list Daniel Buziak as a defendant.  Dkt. Nos. 56 & 86.  The Defendants' objections to the R&R do not list Buziak as a defendant.  Dkt. No. 89.  However, the Plaintiff's response continues to list Buziak as a defendant.  Dkt. No. 90.  The parties are directed to advise the Court on whether Buziak remains a party to this case.

Recommendation (R&R), which recommends that the Defendants' motion be denied. Dkt. No. 86. The Defendants filed objections to the R&R, see Dkt. No. 89, and responses were filed. See Dkt. Nos. 90 & 91. Oral argument was held on May 29, 2014.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must review de novo the portions of the R&R to which objections have been made. Upon de novo review, and after reviewing the submissions and hearing argument from the parties, the Court adopts the R&R in its entirety with modification only to address additional case law which was unavailable at the time that Judge Foschio issued the R&R.

## Discussion

The Supreme Court recently reemphasized the importance of properly applying the long-settled standard for summary judgment. In *Tolan v. Cotton*, 134 S. Ct. 1861 (2014), the Court considered an excessive force claim brought against a police officer who had shot the plaintiff during a confrontation which was precipitated by the officer's mistaken belief that the plaintiff had stolen a car. *Id.* at 1863-65. The District Court held that the officer's use of force "was not unreasonable" and granted the defendant's motion for summary judgment. *Id.* at 1865. The Fifth Circuit affirmed, but held instead that summary judgment was appropriate on the issue of qualified immunity. *Id.*

However, the Supreme Court issued a *per curiam* opinion vacating the Fifth Circuit's decision. According to the Court, "[i]n articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* at 1863 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

*Tolan* has great relevance here. The parties' arguments in this case revolve around a five-minute surveillance video of the incident at the Holding Center. While the Defendants are correct that, at least in some instances, "a video permits a court to rule as a matter of law whether or not the use of force was objectively reasonable and/or whether it constituted a *de minimis* use of force," Dkt. No. 89 at 4, *Tolan* is a reminder that even when there is a video, courts must still draw reasonable inferences in the non-moving party's favor.

*Scott v. Harris*, 550 U.S. 372 (2007), cited by the Defendants, supports this conclusion. In *Scott*, the Supreme Court was presented with a videotape of the underlying events in an excessive force claim. The Court held that, based on the facts of the case, the District Court had improperly denied summary judgment. However, the Court in no way suggested, as the Defendants do, that a videotape should always be dispositive on summary judgment. Instead, the Court held that "[w]hen opposing parties tell two different stories, one of which is *blatantly contradicted by the record*, so that no reasonable jury could believe it, a court

3

should not adopt the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380 (emphasis added).  The italicized language is the key to reconciling *Scott* with *Tolan*.  Where a videotape "blatantly contradict[s]" the remainder of the record, inferences drawn in the non-movant's favor would not be "justifiable."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In such cases, there is no genuine issue of material fact and summary judgment may be appropriate.

However, while there may be differences between the video and the remainder of the record in this case, those differences are not so extreme and one-sided as to justify taking the matter from the jury.  Accordingly, the Court must draw justifiable inferences in the non-movant's—here, the Plaintiff's—favor.  Doing so, the Court cannot find that the Defendants' use of force was objectively reasonable or *de minimis*, as would be required for the Court to grant summary judgment on the objective element of the Plaintiff's excessive force claim.[2]

For example, in his deposition the Plaintiff claims that some of the Defendants punched and kicked him.  *See* Dkt. No. 68-5, 30:5-9; 36:1-38:12.  If true, the Plaintiff's allegations might mean that the Defendants' use of force was objectively unreasonable.  While, as the Defendants note, the video does not

---

[2] To prevail on a claim of excessive force, the Plaintiff must prove that the force used against him was both objectively and subjectively unreasonable.  *See Hudson v. McMillan*, 503 U.S. 1, 7 (1992).  In general terms, the objective element requires that the Plaintiff prove that the force used against him was "sufficiently serious."  *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).  The subjective element requires that the Plaintiff prove that the Defendants "had a wanton state of mind when they were engaged in the alleged misconduct."  *Id.* (internal quotation marks omitted).

show the all-out melee that the Plaintiff describes in his deposition testimony, neither does it completely contradict his side of the story. There are several moments in the video during which a number of the Defendants are on top of the Plaintiff, making it difficult to determine what, if anything they did to him. Indeed, the Plaintiff testified that he was punched in the upper body and possibly in the neck and face. *Id.* at 36:13-16. There are significant portions of the video during which the Plaintiff's torso, face, and neck are obscured by the Defendants' bodies, making it impossible for the Court to tell what, if anything, is happening to the Plaintiff. Where, as here, there is no clear contradiction between the Plaintiff's testimony and the surveillance video, the Court must draw justifiable inferences in the Plaintiff's favor.

Likewise, there are genuine factual disputes on the subjective element of the Plaintiff's excessive force claim. The subjective element of an excessive force claim considers, among other things, "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Thus, if the Plaintiff were resisting the Defendants, then the Defendants' use of force might be subjectively reasonable and summary judgment might be appropriate.

However, once again, the Plaintiff's version of events is not "blatantly contradicted" by the video.  The Plaintiff testified that he was not resisting the officers, see Dkt. No. 68-5, 30:22-31:3, a claim that is not discredited by the video.  This is not, for example, *McKinney v. Dzurenda*, 2014 WL 642574 (2d Cir. Feb. 20, 2014), cited by the Defendants.  In that case, the court was "clear[ly]" able to see on a surveillance video that, "[w]ithout any aggressive moves from any of the [corrections officers], [the plaintiff] assumed a boxing stance and made clear his willingness to fight." *Id.* at *1.  Unlike *McKinney*, the video in this case does not clearly indicate that the Plaintiff was challenging the Deputies' authority.  As Judge Foschio aptly noted in his R&R, "[a]lthough it may be that the sheriffs deputies are not slamming Plaintiff around the . . . cell but, rather, may simply be attempting to restrain Plaintiff, who may be struggling against the deputies, such determination involves a factual determination the court is prohibited from making on summary judgment."  Dkt. No. 86 at 13.

Similarly, the Plaintiff testified in his deposition that one Defendant told the Plaintiff during the incident that "I should kill you" and that "you probably f—cking deserve it."  Dkt. No. 68-5, 57:20; 58:12-14.  If true, such statements might be clear evidence of "a wanton state of mind," satisfying the subjective element of the Plaintiff's excessive force claim.  However, because it lacks audio, there is no way that the video can contradict Plaintiff's testimony.  Accordingly, on summary judgment, the Court is required to credit the Plaintiff's version of events.

Finally, the Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, No. 13-115, slip op. at 11-12 (2014) (internal quotation marks omitted). The parties do not dispute that the right to not be subjected to excessive force existed at the time of this incident. *See* Dkt. No. 89 at 18.[3] Thus, as the Defendants note, this is a case where issues of qualified immunity and excessive force "converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." *Cowan ex rel. Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2003).

However, as Judge Foschio stated in his R&R, "[w]here . . . the objective reasonableness of an officer's actions depends on disputed facts, as in the instant case, summary judgment based on qualified immunity is properly denied. As such, the same material issues of fact precluding summary judgment on Plaintiff's excessive force claims also preclude summary judgment on Defendant's qualified immunity defense." Dkt. No. 86 at 18 (citation omitted). To

---

[3] The Defendants argue that the R&R "simply identifie[d] the generalized protection against excessive force" and did not address whether the right to remain free of excessive force was "clearly established in a more particularized sense." Dkt. No. 89 at 19-20 (internal quotation marks omitted). However, the Defendants do not propose the more "particularized" right that might be at issue and do not point to any facts that should cause the Court to view this case as anything different than a struggle between a detainee and his guards.

7

defeat this conclusion, the Defendants argue that the R&R did not consider that the surveillance video "was reviewed by the Undersheriff, Superintendent, and others," all of whom apparently agreed that the force used in the case was not excessive. Dkt. No. 89 at 20. The Defendants, however, cannot bootstrap their way to qualified immunity by relying solely on their own internal review of the incident. While that review might have relevance to the ultimate determination of qualified immunity, the Court would abdicate its duty on summary judgment if it were to simply rely on the Defendants' supervisors' review of the video.

## **Conclusion**

In its present posture, this case boils down to two credible interpretations of the same video. "[W]here, as here, conflicting inferences may be drawn from such evidence . . . summary judgment may not be granted." *Holdeen v. United States*, 186 F. Supp. 76, 78 (S.D.N.Y. 1960). Indeed, the fact that both parties are able to offer almost second-by-second interpretations of the same video, both of which are credible, is proof that summary judgment is inappropriate. *Compare* Dkt. No. 89 at 11-14 (Defendants' interpretation of the video) *with* Dkt. No. 90 at 7-9 (Plaintiff's interpretation of the video).

By moving for summary judgment, the Defendants have asked the Court to credit their spin on the facts, rather than the Plaintiff's. That is not the purpose of summary judgment; that is the role of a jury. "A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. 1866 (internal quotation marks omitted).

Accordingly, for the reasons set forth in Judge Foschio's R&R, as well as those set forth above, the Defendants' motion for summary judgment is denied. This case is referred back to Judge Foschio for further proceedings.

**SO ORDERED.**

                                       s/ Richard J. Arcara
                                       HONORABLE RICHARD J. ARCARA
                                       UNITED STATES DISTRICT JUDGE

DATED: June 16, 2014